# State of Louisiana
# Secretary of State

08/28/2023

Legal Services Section
P.O. Box 94125, Baton Rouge, LA 70804-9125
(225) 922-0415

GEOVERA SPECIALTY INSURANCE COMPANY
C/O CORPORATION SERVICE COMPANY
501 LOUISIANA AVENUE
BATON ROUGE, LA  70802-5921

Suit No.: 197355
32ND JUDICIAL DISTRICT COURT
TERREBONNE PARISH

HARVEY CLARK
vs
GEOVERA SPECIALTY INSURANCE COMPANY

Dear Sir/Madam:

I am enclosing a citation served in regard to the above entitled proceeding. If you are not the intended recipient of this document, please return it to the above address with a letter of explanation. All other questions regarding this document should be addressed to the attorney that filed this proceeding.

Yours very truly,

R. KYLE ARDOIN
Secretary of State

Served on:  R. KYLE ARDOIN
Served by:  B GARAFOLA

Date: 08/25/2023
Title:  DEPUTY SHERIFF

No: 1297231



KC



## CITATION ON PETITION

**CLARK, HARVEY**

*Versus*

**GEOVERA SPECIALTY INSURANCE COMPANY**



Civil Case: 0197355
*Division: C*
*32nd Judicial District Court*
*Parish of Terrebonne*
*State of Louisiana*

### A RESIDENT OF EAST BATON ROUGE PARISH

TO:      GEOVERA SPECIALTY INSURANCE COMPANY
THROUGH ITS AGENT FOR SERVICE:
R. KYLE ARDOIN
LOUISIANA SECRETARY OF STATE
8585 ARCHIVES AVENUE
BATON ROUGE, LA 70809

A COPY OF THE CASE MANAGEMENT ORDER
REGARDING HURRICANE IDA CLAIMS
IS ATTACHED TO THIS NOTICE

You are named as a defendant in the above captioned matter.  Attached to this citation is a:

☒ **Certified Copy of Original Petition**
☐ **Certified Copy of Amended Petition**
☐ **Discovery Request**

SERVED ON
R. KYLE ARDOIN

AUG 2 5 2023

SECRETARY OF STATE
COMMERCIAL DIVISION

The petition was filed into this office on AUGUST 15, 2023.

     **YOU ARE NOTIFIED** that you must either comply with the demand contained in the attached petition or make an appearance either by filing an answer or other pleading in the 32nd Judicial District Court located at 7856 Main St., Houma, LA 70360 (P. 0. Box 1569, Houma, LA 70361) within the delay provided in Article 1001 of the Louisiana Code of Civil Procedure under penalty of default.

### Article 1151 of the Louisiana Code of Civil Procedure provides in pertinent part:

A defendant shall plead in response to an Amended Petition within the time remaining for pleading to the Original Pleading or with ten (10) days after service of the Amended Petition, whichever period is longer, unless the time is extended under Article 1001.

### Article 1001 of the Louisiana Code of Civil Procedure states:

**A.**  A defendant shall file his answer within **twenty-one (21) days** after service of Citation upon him, except as otherwise provided by law. If the plaintiff files and serves a Discovery Request with his Petition, the defendant shall file his answer to the petition within **thirty (30) days** after service of the amended petition.
**B.** When an Exception is filed prior to Answer and is overruled or referred to the merits, or is sustained and an Amendment of the Petition ordered, the Answer shall be filed within fifteen (15) days after the exception is overruled or referred to the merits, or fifteen (15) days after service of the Amended Petition.
**C.** The Court may grant additional time for answering.

### THE CLERK OF COURT'S OFFICE CANNOT PROVIDE LEGAL ADVICE.

This Citation was issued by the Clerk for the Court for the 32nd Judicial District Court, Parish of Terrebonne, on the 18TH day of AUGUST, 2023.

THERESA A. ROBICHAUX
CLERK OF COURT

By: _____
Deputy Clerk of Court

Requested by: MR. MATTHEW HYMEL, ATTORNEY AT LAW
P.O. BOX 108, THIBODAUX, LA 70302
(985) 446-0418

**Returned and Filed**

_____

_____
Deputy Clerk of Court

[ SERVICE ]

HARVEY CLARK                            *  STATE OF LOUISIANA

VERSUS NO. 197365                       *  HURRICANE CASE

                                        *  PARISH OF TERREBONNE

GEOVERA SPECIALTY INSURANCE
COMPANY                                 *. 32ND JUDICIAL DISTRICT COURT

---

## PETITION BASED ON A FIRST-PARTY INSURANCE
## POLICY FOR HURRICANE-RELATED DAMAGES

---

Appearing herein, through undersigned counsel, come Petitioner, HARVEY CLARK

("CLARK") of the full age of majority and a resident of and domiciled in the Parish of Lafourche,

State of Louisiana, who respectfully represent:

1.

Defendant herein is GEOVERA SPECIALTY INSURANCE COMPANY ("GeoVera"), a

foreign insurance company authorized to do and doing business in the State of Louisiana, and

having appointed R. Kyle Ardoin, Louisiana Secretary of State, 8585 Archives Avenue, Baton

Rouge, Louisiana 70809, for service of process for suits filed against it in this State.

2.

Venue is proper in this Parish pursuant to Louisiana Code of Civil Procedure article 76.

This is an action against the property insurance carrier and the loss occurred in this Parish.

3.

Petitioner secured a homeowner's policy from Defendant. The policy was in effect on or

about August 29, 2021, when Hurricane Ida struck this Parish. Defendant's policy bears policy

number FL00003370 insuring the property located at **31 Killarney Loop, Houma, Louisiana**

**70363-3814** ("covered property").

4.

Defendant determined the proper coverage amount and issued a declarations certificate to

petitioner indicating the insurance coverage for the covered property.

5.

Among other provisions, the policy insured the covered property for One Hundred Thirty-

One Thousand & 00/100 ($131,000.00) Dollars, other structures for Two Thousand Six Hundred

## JUAN W. PICKETT
## JUDGE, DIVISION C

Twenty & 00/100 ($2,620.00) Dollars, personal property for Thirteen Thousand One Hundred & 00/100 ($13,100.00 ) Dollars, and loss of use for Twenty-Six Thousand Two Hundred & 00/100 ($26,200.00) Dollars.

6.

On or about the late morning – early afternoon of August 29, 2021, Hurricane Ida made landfall in or near the Parish.  Prior to and after landfall of Hurricane Ida, the covered property was subjected to hurricane force winds over an extended time period.

7.

The covered property was severely damaged by the sustained hurricane force winds.

8.

Defendant has failed to tender a sufficient amount to petitioner for the actual damages sustained.

9.

Shortly after the storm damage, petitioner filed a claim with defendant for the covered property and was issued defendant's claim number 2124253941.

10.

Defendant failed to pay any amount reasonably close to the actual damages that the covered property sustained.

11.

Defendant failed to pay the full amount to petitioner's loss within sixty (60) days of receipt of the proof of loss

12.

Defendant failed to submit a written offer to settle petitioner's claim within sixty (60) days after receipt of its satisfactory proof of loss.

13.

In Louisiana, and more specifically, for this particular lawsuit, an insurer owes its insureds a duty of good faith and fair dealing meaning that the insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured. Any insurer breaching these duties shall be liable for any damages sustained as a result of the breach.

14.

Defendant's failure to pay the amount of petitioner's property damage claim within sixty (60) days is arbitrary, capricious, and without probable cause as well as its failure to make a written offer to settle petitioner's property damage claim within sixty (60) days.  Pursuant to Louisiana Revised Statutes § 22:1973, in addition to any general or special damages to which petitioner is entitled for breach of the imposed duty, petitioner is entitled to an award of penalties assessed against the insurer in an amount not to exceed (2) two times the damages sustained or Five Thousand and no/100 ($5,000.00) Dollars, whichever is greater, plus reasonable attorney's fees.

15.

Based on the facts occurring herein, defendant is liable to petitioner for damages for his losses, penalties, and attorney's fees, and for all costs of this litigation.

16.

In addition to the damages already alleged, petitioner sustained general damages, including, but not limited to mental anguish, emotional distress, and inconvenience, all of which forms part of damages to which petitioner is entitled and all of which flow from defendant's breach of the obligations imposed by various Louisiana statutes pertaining to recovery of first-party insurance losses.

17.

Petitioner hereby reserves the right to supplement and amend his Petition for Damages in the event that additional damages are discovered or additional expenses are incurred.

WHEREFORE, based on the facts as alleged herein, petitioner prays:

A.    GeoVera Specialty Insurance Company, be duly cited and served with a copy of this Petition for Damages and be ordered to answer same in the manner provided by law;

B.    There be judgment herein in favor of petitioner and against defendant, for such damages as the Court deems to be just and reasonable, including penalties and attorney's fees, together with legal interest from the date of the contractual breach until paid and for all costs hereof; and

3

C.    For all order and decrees necessary in the premises and for full, general, and equitable relief.

Respectfully submitted,

BLOCK LAW FIRM, APLC
422 East First Street
Post Office Box 108
Thibodaux, Louisiana 70302
(985) 446-0418 phone
(985) 446-0422 facsimile
mph@blocklawfirm.com

JERALD P. BLOCK, #3151
MATTHEW P. HYMEL#38283
*Attorneys for Petitioner,*
*Harvey Clark*

**PLEASE SERVE:**

GEOVERA SPECIALTY INSURANCE COMPANY
Through its agent for service:
R. Kyle Ardoin
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

FILED

AUG 1 5 2023
/s/ Shannon L. Bergeron

DEPUTY CLERK OF COURT
PARISH OF TERREBONNE, LA

A TRUE COPY OF THE ORIGINAL
CLERK'S OFFICE, HOUMA
LA. _____ AUG 1 8 2023 _____, 20 ____
BY _____
Deputy Clerk of Court

4

| | |
|---|---|
| **HARVEY CLARK** | \* **STATE OF LOUISIANA** |
| **VERSUS NO.** *197355* | \* **HURRICANE CASE** |
| | \* **PARISH OF TERREBONNE** |
| **GEOVERA SPECIALTY INSURANCE COMPANY** | \* **32ND JUDICIAL DISTRICT COURT** |

---

## REQUEST FOR WRITTEN NOTICE

---

Pursuant to Louisiana Code of Civil Procedure, Article 1572, the Clerk of Court of the Parish of Terrebonne is hereby requested to give the undersigned counsel written notice by mail at least ten (10) days in advance, of the date fixed for the trial or hearing of this cause, whether on exception, rule or on the merits.

The Clerk of Court for the Parish of Terrebonne is further requested to forward the undersigned counsel notice of any order or judgment rendered in this cause immediately upon entry of such order or judgment.

BLOCK LAW FIRM, APLC
422 East First Street
Post Office Box 108
Thibodaux, Louisiana 70302
(985) 446-0418 *Phone*
(985) 446-0422 *Facsimile*
mph@blocklawfirm.com


JERALD P. BLOCK #3151
MATTHEW P. HYMEL #38283


FILED

AUG 15 2023
/s/ Shannon L. Bergeron
DEPUTY CLERK OF COURT
PARISH OF TERREBONNE, LA

## LOUISIANA CIVIL CASE REPORTING
### Civil Case Cover Sheet - LA. R.S. 13:4688 and
### Part G, §13, Louisiana Supreme Court General Administrative Rules

This civil case cover sheet shall be completed by counsel for the petitioner, counsel's authorized representative, or by the self-represented litigant (if not represented by counsel) and submitted with the original petition filed with the court. The information should be the best available at the time of filing. This information does not constitute a discovery request, response or supplementation, and is not admissible at trial.

### HURRICANE CASE

**Suit Caption:**

HARVEY CLARK

, vs. ,

GEOVERA SPECIALTY INSURANCE COMPANY

**Court:** _____32nd Judicial District Court_____    **Docket Number:** _197355_

**Parish of Filing:** _Terrebonne_    **Filing Date:** _AUG 15 2023_

**Name of Lead Petitioner's Attorney:** Jerald P. Block, #3151

**Name of Self-Represented Litigant:** N/A

**Number of named petitioners:** 2    **Number of named defendants:** 1

**Type of Lawsuit: Please check the categories which most appropriately apply to this suit (no more than 3 categories should be checked):**

__Auto: Personal Injury
__Auto: Wrongful Death
__Asbestos: Property Damage
__Product Liability
__Intentional Bodily Injury
__Intentional Wrongful Death
__Business Tort
__Defamation
__Environmental Tort
__Intellectual Property
__Legal Malpractice
__Other Professional Malpractice
__Maritime
__Wrongful Death
_x_General Negligence - Insurance Dispute - Hurricane Ida

__ Auto: Property Damage
__ Auto: Uninsured Motorist
__ Asbestos: Personal Injury/Death
__ Premise Liability
__ Intentional Property Damage
__ Unfair Business Practice
__ Fraud
__ Professional Negligence
__ Medical Malpractice
__ Toxic Tort
__ Other Tort (describe below)
__ Redhibition
__ Class action (nature of case)

FILED

AUG 15 2023

/s/ Shannon L. Bergeron
DEPUTY CLERK OF COURT
PARISH OF TERREBONNE, LA

**Please briefly describe the nature of the litigation in one sentence of additional detail:**
Arbitrary and capricious acts on behalf of defendant for failure to pay property damage sustained as a result of Hurricane Ida. Pursuant to Louisiana Revised Statute § 22:1973.

Following the completion of this form by counsel, counsel's representative, or by the self-represented litigant, this document will be submitted to the Office of the Judicial Administrator, Supreme Court of Louisiana, by the Clerk of Court.

Name, address and contact information of person completing form:

Name _Matthew P. Hymel, #38283_    Signature _____

Address _Block Law Firm, APLC, 422 East First Street, Thibodaux, Louisiana 70301_

Phone number: _985-446-0418_    E-mail address: _mph@blocklawfirm.com_

IN RE: HURRICANE IDA CLAIMS     :     STATE OF LOUISIANA

                                  :     PARISH OF TERREBONNE

                                  :     32nd JUDICIAL DISTRICT COURT

## STANDING ORDER REGARDING INITIAL DISCOVERY PROTOCOLS IN CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA

This Court hereby **ORDERS** the that the following protocols for initial discovery disclosure ("Disaster Protocols") shall be observed in all cases involving first-party insurance property damage claims arising from Hurricane Ida ("Hurricane Cases"):

Within 45 days after the defendant's submission of a responsive pleading or motion, the parties must exchange any documents or information categorized under the Disaster Protocols, for any such time periods identified in the Disaster Protocols. All parties shall remain under an ongoing duty to supplement these responses. No extension or delay in the time to file responsive pleadings shall extend the Disclosure Deadline to more than 90 days from the service of the petition unless the extension is by the consent of all parties or pursuant to an express Order of this Court extending the Disclosure Deadline. A supplemental response is due 21 days prior to mediation.

A party may object to disclosure of these initial discovery materials *only* if the material falls within one of the categories specifically enumerated in the Disaster Protocols -- including, but not limited to, attorney-client privileged material, or work-product protection, including any joint defense agreement. Should any party raise such an objection, the non-disclosing party shall provide a log of all material being withheld from disclosure, which shall include the specific grounds upon which the disclosure is being withheld.

If any party believes that there is good cause why a particular case should be exempted from the Disaster Protocols, in whole or in part, that party must file their objection with the court prior to the expiration of the 45-day period set forth herein.

**SO ORDERED** on this ___23___ day of December, 2021, at Houma, Louisiana.


**Timothy C. Ellender, Jr.**
District Judge, Division "A"

**Jason A. Dagate**
District Judge, Division "B"

**Juan W. Pickett**
District Judge, Division "C"

**David W. Arceneaux**
District Judge, Division "D"

**Randall L. Bethancourt**
District Judge, Division "E"

FILED

DEC 29 2021

_____ By _____
Deputy Clerk of Court
Parish of Terrebonne, LA

1

**EXHIBIT "A"**

**INITIAL DISCOVERY PROTOCOLS FOR FIRST-PARTY INSURANCE
PROPERTY DAMAGE CASES ARISING FROM HURRICANES IDA**

## PART 1: INTRODUCTION AND DEFINITIONS.

(1) Statement of purpose.

    a. These Disaster Litigation Initial Discovery Protocols ("Disaster Protocols") apply to cases involving first-party insurance property damage claims arising from man-made or natural disasters ("Disaster Cases"). The Disaster Protocols are designed to be implemented by trial judges, lawyers, and litigants in state and federal courts. The Disaster Protocols make it easier and faster for the parties and their counsel to: (1) exchange important information and documents early in the case; (2) frame the issues to be resolved; (3) value the claims for possible early resolution; and (4) plan for more efficient and targeted subsequent formal discovery, if needed.

    b. Participating courts may implement the Disaster Protocols by local rule or by standing, general, or individual-case orders. Although the Disaster Protocols are designed for the full range of case size and complexity, if any party believes that there is good cause why a case should be exempted, in whole or in part, from the Disaster Protocols, that party may raise the issue with the court.

    c. The Disaster Protocols are not intended to preclude or modify any party's rights to formal discovery as provided by law, code or other applicable rules. Responses to the Disaster Protocols do not waive or foreclose a party's right to seek additional discovery under the applicable rules.

    d. Except as modified by the court, the Disaster Protocols were prepared by a balanced group of highly experienced attorneys from across the country with expertise in Disaster Cases. The Disaster Protocols require parties to exchange information and documents routinely requested in every Disaster Case ("Initial Discovery"). This Initial Discovery is unlike initial disclosures under federal or state rules because it includes favorable as well as unfavorable information and documents, is limited to information and documents that are not subject to objection, and is limited to the information and documents most likely to be important and useful in facilitating early settlement discussion and resolving or narrowing the issues requiring further litigation

(2) Definitions. The following definitions apply to cases under the Disaster Protocols.

    a. *Claimed Loss.* "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer in the litigation.

    b. *Document.* "Document" and "documents" are defined to be synonymous in meaning and equal in scope to the phrase "documents or electronically stored information" in FRCP 34(a)(1)(A) or similar state rules. A draft of a document or a nonidentical copy is a separate document.

    c. *Event.* "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

    d. *Identify (Documents).* When referring to documents, to "identify" means to describe, to the extent known: (i) the type of document; (ii) the general subject matter; (iii) the date; (iv) the author(s), according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was to have been sent. Alternatively, to "identify" a document means to produce a copy.



e. *Identify (Natural Persons).* When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) email address; (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent requests to identify that person.

f. *Identify (Non-Natural Persons or Entities).* When referring to a corporate entity, partnership, or other unincorporated association, to "identify" means to give the: (i) corporate or entity name and, if known, the trade or other names under which it has done business during the relevant time period; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number; and (v) internet address. Once a corporate or other business entity has been identified in accordance with this subparagraph, only the name of that entity needs to be listed in response to subsequent requests to identify that entity.

g. *Insurer.* "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

h. *Insured.* "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation, or asserting a claim under an assignment.

i. *Loss.* "Loss" means damage to the Property caused by the Event.

j. *Other Insurance.* "Other Insurance" means any insurance policy, other than the Policy in force on the date of the Event, that covers or potentially covers the Property or the Claimed Loss.

k. *Policy.* "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

l. *Property.* "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

m. *Relating to.* "Relating to" means concerning, referring, describing, evidencing, or constituting.

(3) Instructions.
  a. The relevant time period for this Initial Discovery begins on the date immediately before the Event and ends 21 days prior to the mediation under the Court's SSP, unless a different time period is indicated with respect to a specific production obligation as set out in Part 2 or Part 3 below. The first disclosure is due 45 days from the date the defendant files responsive pleadings. A supplemental disclosure must be made 21 days prior to the mediation. In extraordinary circumstances for additional information that could not be provided previously that came into the possession of the responding party after the supplemental disclosure deadline, a second supplemental disclosure should be made before mediation.

  b. This Initial Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection, including a joint defense agreement. Documents withheld based on a privilege or work-product protection claim are subject to expressly making the claim A detailed privilege log is required as specified in the applicable Case Management Order or any subsequent orders of the Court, otherwise documents withheld as privileged or work-product protected communications may be described briefly by category or type. Withholding documents on this basis does not alleviate any obligation to produce the withheld documents or additional information about them at a later date, if the court orders or the applicable rules require.

3

c. If a partial or incomplete or "unknown at this time" answer or production is given to any disclosure requirement in these Disaster Protocols, the responding party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

d. For this Initial Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available. This Initial Discovery is subject to obligations on supplementation and relevant requirements concerning certification of responses. This Initial Discovery does not preclude either party from seeking additional discovery later under the rules.

e. This Initial Discovery is subject to the attached Interim Protective Order unless the parties agree or the court orders otherwise. The Interim Protective Order will remain in place until and unless the parties agree on, or the court orders, a different protective order. Absent party agreement or court order, the Interim Protective Order does not apply to subsequent discovery.

f. Within 14 days after the later of entry of this Order or the filing of a responsive pleading by the responding party, the Parties shall meet and confer on the format (e.g., searchable PDF, Excel spreadsheet) for the production of documents under these Disaster Protocols. This will not delay the timeframes for Initial Discovery, absent court order. Nor will production in one format preclude requesting production in another format, if applicable rules of discovery allow.

## PART 2: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURED.

(1) Timing.
Unless the court orders otherwise, the Insured's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court).

(2) Information to be produced by the Insured:

a. A description of the Insured's ownership or other interest in the Property.

b. The address of the Property (or location of movable Property) on the date of the Event.

c. The name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefitting the Insured or the Property on the date of the loss, including relevant policy and claim numbers for any claims.

d. Identify any current mortgagee or other known lien holder.

e. A computation of each item or type of Claimed Loss, including content claims if in dispute. When the Policy requires, the computation should reasonably identify or itemize price and quantity of materials.

f. Identify any payments received under the Policy relating to the Event. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

g. Identify any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss.

h. Identify the public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed Loss.

4

i.  With respect to any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims made for coverage by the Insured on the same Property at issue in this litigation.

j.  Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

k.  A general description, including the court and docket number, of any other lawsuits arising from the Event relating to the Property.

l.  A general description of any known preexisting damage to the Property relating to the Claimed Loss.

m.  A general description of any claims for property damage or lawsuits resulting from property damage in the past ten years relating to the Property.

n.  Identify any sale, transfer, or foreclosure of the Property after the Event.

(3)  Complete and unaltered copies of the following documents to be produced by the Insured:
   a.  Documents relating to the Claimed Loss, including: loss estimates; adjuster's reports; engineering reports; contractor's reports; estimates, bids, plans, or specifications regarding repair work (whether planned, in progress, or completed); photographs; videos; or other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss. This shall include all reports or analyses, including draft reports, prepared on behalf of Insured.

   b.  Proofs of loss for the Claimed Loss.

   c.  Documents relied on by the Insured in generating any proof of loss required or provided under the Policy.

   d.  Written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim.

   e.  Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Loss.

   f.  Written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event.

   g.  The insurance policy with respect to any Other Insurance, and the claim numbers for claims made to recover Loss to the Property relating to the Event.

   h.  Appraisals or surveys of the Property condition within five years before, or any time after, the Event.

   i.  If there has been an appraisal under the Policy, documents relating to the appraisal process.

   j.  Any other document(s) on which the Insured relies to support the Claimed Loss.

## PART 3: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURER.

(1)  Timing.

(2)  Unless the court orders otherwise, the Insurer's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiff's claim), or within 20 days of the date of this Order if that date is later. **The disclosures related to Insurers and the use**

of the term "Insurer" under this Part shall extend to anyone acting for or on behalf of the Insurer in relation to the claim of the Insured, including the employees, contractors, and agents of either the Insurer or anyone providing services to the Insurer related to the Insured's claim or Claimed Loss.

(3) Information to be produced by the Insurer:

    a.  **If there is a dispute over coverage,** in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including:

        i.  Any exclusions or exceptions, or other coverage or legal defenses;

        ii.  The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;

        iii.  Whether there is also a dispute as to the value or amount of the Claimed Loss;

        iv.  Any other basis on which coverage was denied.

    b.  **If there is a dispute over all or part of the valuation,** an explanation of the Insurer's basis for disputing the value or amount of the Claimed Loss, including:

        i.  The Insurer's understanding of the nature of the dispute;

        ii.  The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and

        iii.  The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.

    c.  Any Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.

    d.  Any payments previously made under the Policy relating to the Event.

    e.  A general description of any other basis for nonpayment of the Claimed Loss, in whole or in part.

    f.  Any other Event-related lawsuits filed for the Property or the Insured.

    g.  Identify the adjuster(s) who handled the claim.

    h.  Identify the individual(s) who evaluated, recommended, made, approved, or rejected the claim decision.

    i.  Identify the field personnel, estimators, inspectors, contractors, engineers, or other persons who participated in any investigation of the claims or the claims process, had any part relating to Insurer's evaluation process for the claims, or upon who the Insurer relied upon or received information from concerning Insurer's evaluation process or claim decision; and identify anyone who had any role in drafting, editing, reviewing, or approving any report(s), evaluation(s), or inspection(s) on behalf of Insurer involving the Insured's claim.

    j.  If preexisting damage is at issue in the litigation, a general description of any prior claims in the past ten years for the Property.

(4) Complete and unaltered copies of the following documents to be produced by the Insurer:

    a.  The entire claim file maintained by the Insurer.

    b.  The complete Policy in effect at the time of the Event.

    c.  Assessments of the Claimed Loss, including: loss reports, expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy, damage assessments, adjuster's reports, engineering reports, contractor's reports, and estimates of repair or replacement. This shall include all reports or

analyses, including all drafts, prepared as part of the evaluation or claims process involving Insured's claim by Insurer, or documents or records reviewed in any way in connection with Insurer's handling of the claim.

d.  Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

e.  Any other evaluations of the Claimed Loss.

f.  Documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

g.  Any claim log, journal, diary, or record maintained by the Insurer relating to the Claimed Loss. This includes all written records, written communications, records of oral communications, reports, audits, or other records, including any documents, envelopes, logs, notes, or other documents evidencing when Insurer came into possession of any such records, regarding any aspect of the Insured's claim or that are in any way relating to the Insurer's investigation into the Claimed Loss, Insurer's processing of Insured's claim (including adjustment, evaluation, and handling), or Insurer's claim decision.

h.  The complete underwriting file maintained by the Insurer relating to the Property, its condition, or coverage.

i.  Proofs of loss for the Claimed Loss.

j.  If there has been an appraisal under the Policy, all documents relating to the appraisal process.

k.  Any manuals, policies, directives, guidelines, instructions (whether written, electronic, or otherwise), literature, or similar written materials that would pertain to the Claimed Loss, Hurricane Ida claims generally, or to similar types of claims generally such that they would therefore be applicable to the Hurricane Cases including the Insured's claim. This includes any document that Insurer relied upon, or intends to rely upon, pertaining to industry guidelines, standard practices, or recommended practices for adjusting first party claims.

l.  **For non-NFIP Claims**, written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

m.  Any other document(s) on which the Insurer relies to support its defenses.

IN RE: HURRICANE IDA CLAIMS     :     STATE OF LOUISIANA

                                   :     PARISH OF TERREBONNE

                                   :     32nd JUDICIAL DISTRICT COURT

---

## INTERIM PROTECTIVE ORDER

The Initial Discovery Protocols are designed to achieve more efficient and targeted discovery. Prompt entry of a protective order will allow the parties to begin exchanging documents and information without delay. The Interim Protective Order will remain in place until the parties agree to, or the court orders, a different protective order, but absent agreement or court order, the Interim Protective Order will not apply to subsequent discovery. The parties may agree to use the Interim Protective Order throughout litigation.

**IT IS HEREBY ORDERED** that the following restrictions and procedures apply to certain information, documents, and excerpts from documents and information the parties exchange in response to the Disaster Protocols:

1. Any party may designate as "Confidential" any document, or information contained in or revealed in a document, provided in response to these Protocols or, if applicable, in subsequent discovery, if the party determines, in good faith, that the designation is necessary to protect the party. Information and documents a party designates as confidential will be stamped "CONFIDENTIAL." Confidential information or documents are referred to collectively as "Confidential Information."

2. Unless the court orders otherwise, the Confidential Information disclosed will be held and may be used by any person receiving the information solely in this litigation.

3. If a party challenges another party's Confidential Information designation, counsel must make a good-faith effort to resolve the dispute. If that is unsuccessful, the challenging party may seek resolution by the court. Nothing in this Interim Protective Order is an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party specifically reserves the right to object to the use or admissibility of all Confidential Information disclosed, in accordance with applicable law and court rules.

4. Information or documents designated as "Confidential" must not be disclosed to any person, except:

   a. the requesting party and counsel, including in-house or agency counsel;

   b. employees of counsel assigned to and necessary to assist in the litigation;

   c. consultants or experts assisting in the prosecution or defense of the litigation, to the extent deemed necessary by counsel;

   d. any person from whom testimony is taken or is to be taken in this litigation, but that person may be shown the Confidential Information only in preparation for, and during, the testimony and may not retain the Confidential Information; and

   e. The judge, the court staff, including the clerk, case manager, court reporter, or other person with access to Confidential Information by virtue of his or her position with the court, or the jury.

   f. The Special Master, his designated deputy, and any mediator involved in resolving the case, who shall all be subject to these confidentiality provisions.

5. Before disclosing or displaying Confidential Information to any person, a party must:

  a. inform the person of the confidential nature of the information and documents; and

  b. inform the person that the court has enjoined the use of the information or documents for any purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

6. The Confidential Information may be displayed to and discussed with the persons identified in Paragraphs 4(c) and (d) only on the condition that before any such display or discussion, each person must be asked to sign an agreement to be bound by this Order in the form attached as Exhibit 1. If the person refuses to sign an agreement in the form attached, the party seeking to disclose the Confidential Information may seek relief from the court.

7. The disclosure of a document or information without designating it as "Confidential Information" does not waive the right to designate the document or information as Confidential Information if the document or information is designated under this Order.

8. Documents or information filed with the court that is subject to confidential treatment under this Order, and any pleadings, motions, or other papers filed with the court disclosing any Confidential Information, must be filed under seal to the extent permitted by the law, rules, or court orders, and must be kept under seal until the court orders otherwise. To the extent the court requires any further act by the parties as a precondition to filing the documents or information under seal, the party filing the document or information is responsible for satisfying the requirements. If possible, only the confidential parts of documents of information filed with the court will be filed under seal.

9. At the conclusion of this litigation, the Confidential Information and any copies must be promptly (and in no event later than 60 days after entry of final judgment no longer subject to appeal) returned to the producing party or certified as destroyed, except that the parties' counsel may retain their working files on the condition that those files will remain confidential. Materials filed in the court will remain in the file unless the court orders their return.

10. Producing documents or information, including Confidential Information, in this litigation does not waive attorney-client privilege or work-product protection for the documents or information, under Louisiana Code of Evidence Article 502.

This Order shall not diminish the right of any party to apply to the court for a different or additional Protective Order relating to Confidential Information, to object to the production of documents or information, to apply to the court for an order compelling production of documents or information, or to modify this Order. Any party may seek enforcement of this Order, and any violation of this Order may be sanctioned by the Court.

    **SO ORDERED** on this 23 day of December, 2021, at Houma, Louisiana.

Timothy C. Ellender, Jr.
District Judge, Division "A"

Jason A. Dagate
District Judge, Division "B"

Juan W. Pickett
District Judge, Division "C"

David W. Arceneaux
District Judge, Division "D"

Randall L. Bethancourt
District Judge, Division "E"

FILED
DEC 29 2021
Deputy Clerk of Court
Parish of Terrebonne, LA

9

IN RE: HURRICANE IDA CLAIMS        :        STATE OF LOUISIANA

                                   :        PARISH OF TERREBONNE

                                   :        32ND JUDICIAL DISTRICT COURT

---

## EXHIBIT "B"

### Exhibit

## STIPULATION FOR MEDIATION

**IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned parties:

1.  The parties agreed to submit their dispute to mediation pursuant to the SSP, as specified in the Case Management Order (and any relevant supplements).

2.  No party shall be bound by anything said or done during the mediation, unless either a written and signed stipulation is entered into or the parties enter into a written and signed agreement. The appointed neutral may meet in private conference with less than all parties. Information obtained by the neutral, either in written or oral form, shall be confidential and except as provided by Order of the Court it shall not be revealed by the neutral unless and until the party who provided the information agrees to its disclosure.

3.  The mediation process, for the purpose of all federal and state rules protecting disclosures made during such conferences from later discovery or use in evidence, shall be considered a settlement negotiation. The entire procedure shall be confidential, and no stenographic or other record shall be made except to memorialize a settlement record. All communications, oral or written, made during the mediation by any party or a party's agent, employee, or attorney are confidential and, where appropriate, are to be considered work product and privileged. Such communications, statements, promises, offers, views and opinions shall not be subject to any discovery or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties. However, any evidence which would otherwise subject to discovery or admissible shall not be excluded from discovery or admission in evidence solely because it has been referenced or discussed during this mediation process.

4.  The appointed neutral and their agents shall enjoy the same immunity as judges and court employees, whether under federal or state law, for any act or omission in connection with the mediation, and from compulsory process to testify or produce documents in connection with the mediation.

5.  The parties shall not:

    (i)   Call or subpoena the appointed neutral as a witness or expert in any proceeding relating to: the mediation, the subject matter of the mediation, or any thoughts or impressions which the appointed neutral may have about the parties in the mediation;
    (ii)  Subpoena any notes, documents or other material prepared by the appointed neutral in the course of or in connection with the mediation; and
    (iii) Offer into evidence any statements, views or opinions of the appointed neutral.

6.  The appointed neutral's services have been made available to the parties through the dispute resolution procedures sponsored by the Court. In accordance with those procedures, the appointed neutral represents that he or she has taken requisite oaths.

7.    Any party to this Stipulation is required to attend at least one session and as may be directed by the Special Masters as many other sessions thereafter as may be helpful in resolving this dispute.

8.    An individual with final authority to settle the matter and to bind the party shall attend the mediation on behalf of each party.


_____          _____
**PLAINTIFF**                                           **COUNSEL FOR PLAINTIFF**

Date: _____                              Date: _____



_____          _____
**DEFENDANT**                                         **COUNSEL FOR DEFENDANT**

Date: _____                              Date: _____

**CONSENTED TO BY:**



_____
**NEUTRAL APPOINTED BY THE COURT**

Date: _____

| IN RE: HURRICANE IDA CLAIMS | : | STATE OF LOUISIANA |
|---|---|---|
| | : | PARISH OF TERREBONNE |
| | : | 32ND JUDICIAL DISTRICT COURT |

## EXHIBIT "C"

### FORM FOR ISC DEMAND BY INSURED

| Category | Policy Limits | Damage(s) | Prior Payments | ISC DEMAND |
|---|---|---|---|---|
| A. Property | _____ | _____ | _____ | _____ |
| B. Other Structures | _____ | _____ | _____ | _____ |
| C. Personal Property | _____ | _____ | _____ | _____ |
| D. ALE | _____ | _____ | _____ | _____ |

Claim for Statutory Bad Faith Penalties on Late Prior Payments _____

Claim for Statutory Bad Faith Penalties on ISC Demand _____

Claim for Attorney's Fees _____

Total Claim for Other Damages (describe below): _____

_____

_____

_____

TOTAL _____

This demand is for the purposes of mediation only and is covered by mediation confidentiality. It may not be used for any other purpose. It is rescinded if the case does not settle as part of the SSP. The plaintiff reserves the right to modify the demand based on changes in circumstances or supplemental information. The plaintiff reserves the right to asserts claims for expert costs, judicial interest, and mental anguish / economic damages and related penalties pursuant to R.S. 22:1973 at any trial of this matter even if they are not listed above.

| IN RE: HURRICANE IDA CLAIMS | : | STATE OF LOUISIANA |
| | : | PARISH OF TERREBONNE |
| | : | 32^TH JUDICIAL DISTRICT COURT |

## EXHIBIT "D"

### FORM FOR ISC DETAIL OF PAYMENTS BY INSURER

| Category | Policy Limits | Prior Payments | Date(s) |
|---|---|---|---|
| A. Property | _____ | _____ | _____ |
| B. Other Structures | _____ | _____ | _____ |
| C. Personal Property | _____ | _____ | _____ |
| D. ALE | _____ | _____ | _____ |
| OTHER: | _____ | _____ | _____ |

Other Detail:_____

| TOTAL | _____ | _____ | |

IN RE: HURRICANE IDA CLAIMS          :          STATE OF LOUISIANA

                                     :          PARISH OF TERREBONNE

                                     :          32ND JUDICIAL DISTRICT COURT

_____

## CASE MANAGEMENT ORDER
### REGARDING CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA

On August 29, 2021, Hurricane Ida came ashore near Port Fourchon, Louisiana and left destruction throughout Terrebonne Parish as a major Category 4 Hurricane.[1] Major Hurricane-force winds in excess of 138 mph impacted Terrebonne Parish and inflicted catastrophic damage throughout the entirety of this Court's jurisdiction.[2] The causes of action arising therefrom may sometimes be referred to as "the Hurricane Cases."[3]

In the aftermath of these catastrophic natural disasters, this Court recognizes a substantial volume of insurance coverage-related litigation linked to the Hurricane. In Act 318 of the 2021 Regular Session the Legislature of Louisiana amended the laws expanding judicial authority related to special masters and mandatory mediation in cases stemming from certain major disasters ("Act 318").[4] The Act authorized this Court to appoint "one or more Special Masters."

The Court finds that Act 318 authorizes the issuance of this CMO, which this Court considers to be the appropriate means to promote the efficient adjudication of Hurricane cases in this Court.[5] This Court's objective is the just and expedient resolution of these related matters, in spite of the increased strain on the Court's resources, and with the primary goal of enabling the Terrebonne Parish community to move forward with crucial recovery efforts, in the aftermath of the Hurricane and the ongoing Coronavirus pandemic.

**IT IS HEREBY ORDERED** that this Case Management Order shall be immediately applicable to all Hurricane Cases currently pending or hereafter filed in this Court.

---

[1] https://www.theadvocate.com/baton_rouge/news/article_0cc1dc86-0a90-11ec-827e-6342102b8d5d.html
[2] https://www.theadvocate.com/baton_rouge/news/business/article_10bb5488-11d0-11ec-82c3-e3dd67bc12ad.html ; https://www.weather.gov/lix/hurricaneida2021 ; and https://www.nbcnews.com/news/us-news/live-blog/hurricane-ida-live-updates-8-30-n1277989/ncrd1278026#liveBlogHeader
[3] All causes of action concerning damage related to Hurricane Ida is subject to this Order, including causes of action where the third-party demand or cross claim is a claim against an insurer by an insured due to damage from the Hurricane.
[4] Hurricane Ida qualifies pursuant to R.S. 13:4165(F)(1). A major disaster declaration was made by the President for Terrebonne Parish in Hurricane Ida under FEMA Release No. HQ-21-181. Terrebonne Parish qualified for individual assistance for the Hurricane (FEMA designation DR-4611-LA).
[5] Hurricane Ida ties Hurricane Laura for the strongest hurricane to hit Louisiana and the fifth strongest Hurricane to hit the United States. Act 318 was enacted in the aftermath of Hurricane Laura and this CMO is modeled extensively on the CMO successfully adopted by the 14th Judicial District Court following Hurricane Laura.

## SECTION 1. DISASTER PROTOCOLS FOR INITIAL DISCLOSURES

The Court has reviewed the Disaster Litigation Initial Discovery Disaster Protocols adopted by the United States District Court for the Western District of Louisiana, applicable to all Hurricane Cases[6] and the nearly identical Disaster Protocols implemented by the U.S. District Court for the Southern District of Texas following Hurricane Harvey.[7] These Disaster Protocols call for prompt sharing of specific information to promote uniformity, to facilitate prompt evaluation of each case, to foster communication between the parties, and to facilitate an expedited mediation procedure.

Accordingly, this Court has adopted the Disaster Protocols attached hereto as Exhibit "A" in the Disaster Protocols Order and makes them applicable to all Hurricane cases filed in this Court. Additionally, **IT IS HEREBY ORDERED** that there shall be an automatic extension of time to Answer in every Hurricane case until the 30th day after service of the plaintiff's petition. No further extensions of time shall be granted except in exigent circumstances.

Additionally, **IT IS HEREBY ORDERED** that the disclosures and exchange of information required by the Disaster Protocols Order shall be due 45 days from the date that defendant files responsive pleadings. This deadline may sometimes hereinafter be referred to as the "Disclosure Deadline". Even if the parties agree to further extension of time to file responsive pleadings, the Disclosure Deadline shall be no more than 90 days from the service of the petition unless the extension of the Disclosure Deadline is expressly extended by the written consent of all parties or pursuant to an express Order of this Court to extend it.

**IT IS FURTHER ORDERED** that each party shall supplement their Initial Disclosures at least twenty-one days prior to any scheduled mediation pursuant to the CMO.[8]

**IT IS FURTHER ORDERED** that all other discovery is stayed until certification of the completion of the Streamlined Settlement Process ( "SSP"). However, the Special Masters may authorize limited formal discovery during the SSP in extraordinary circumstances.[9]

## SECTION 2.  PRIVILEGE

Documents for which a privilege may properly be asserted include communications that reflect the mental impressions, conclusions, opinions, or theories of an attorney.[10] However, as recognized by federal courts concerning hurricane cases "Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are not privileged and should be produced."[11]

---

[6] https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1_Att_A_Dis covery_Protocols.062121.tzd_0.pdf
[7] *United States District Court for the Southern District of Texas*, Disaster Litigation Initial Discovery Protocols, *available at* https://www.txs.uscourts.gov/sites/txs/files/Disaster%20FINAL%20Web%20version.pdf
[8] If the Special Master finds a production under the Disaster Disclosures too voluminous or disorganized to be useful for the SSP, he may require that the Disaster Disclosures be bates numbered and organized with a Table of Contents.
[9] The parties are encouraged to make requests for limited discovery in complex cases when necessary to effectively participate in the SSP outlined herein.
[10] La. C.C.P. art. 1424(A)

[11] United States District Court for the Western District of Louisiana, *In Re Hurricane Laura and Delta*

Therefore, **IT IS FURTHER ORDERED** that any party withholding disclosure of any information or documents, where said disclosure is required pursuant to the Disaster Protocols, shall produce a privilege log to opposing counsel on or before the Disclosure Deadline. This privilege log shall detail all information or documents that it declined to produce on the basis of that the material is privileged. The log should include the author of the document, the recipient of the document, the date of the document, and the nature of the privilege asserted.

Any dispute concerning privileged items shall be referred to the Special Master. If a motion to compel related to the privilege log is filed, or if any other privilege dispute is raised with the Special Master, the disputed items shall be provided to the Special Master *in camera* within ten days. The Special Master or his designated deputy shall provide all parties with a report and recommendation concerning the claimed privilege.

If neither party opposes the report and recommendation within seven days of its receipt then the Court may issue an Order confirming it. If either party opposes the report and recommendation within seven days of its receipt then the report shall be transmitted to the Court by the Special Master together with the *in camera documents*. The opposing party may file a memorandum concerning the report and recommendation within seven days of receiving the report, and any other party may file a response within five days of the filing of the opposition.

## SECTION 3. SPECIAL MASTERS AND APPOINTED NEUTRALS

Considering the foregoing reasons supplied by the Court in the introduction *infra*, the Court finds that exceptional circumstances exist which warrant the appointment of Special Masters to assist with the efficient and fair administration of all Hurricane Cases. Pursuant to the Court's inherent judicial power and its authority under La. R.S. 13:4165, *et seq*, it is ordered that **THE COURT HEREBY APPOINTS LADDIE L. FREEMAN, ESQ.** as the Co-Special Master for Hurricane Cases in the 32nd Judicial District Court and does hereby appoint **CADE R. COLE, ESQ.** as Co-Special Master for Hurricane Cases in the 32nd Judicial District Court (hereby sometimes referred to as the "Special Master for CMO Operations") to serve as coordinator of services pursuant to the SSP.

The Court takes notice of Cade R. Cole's role as Special Master under the CMO for Hurricane cases in multiple other state district courts. The Court takes notice of Laddie L. Freeman's long service in this community. Either Special Master may exercise the duties under this Order, provided that, Mr. Freeman is primarily charged with serving as a principal point of contact to the bench, bar, and community including recommending mediators.

---

*Cases: Case Management Order No. 1*, p. 3, *available at* https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1.012221.tzd.pdf

United States District Court for the Eastern District of New York, *In Re Hurricane Sandy Cases: Case Management Order No. 1*, p. 10, *available at* https://img.nyed.uscourts.gov/files/general-ordes/14mc41cmo01.pdf.

The Court anticipates that this appointment and continued coordination with any federal Special Master will encourage consistent resolutions of Hurricane Cases. As part of their appointment, the Court mandates that the Special Master shall proceed with all reasonable diligence and shall exercise their respective rights and responsibilities to direct the Streamlined Settlement Process as provided in this Order.

**IT IS FURTHER ORDERED** that the Neutrals, referenced in Section 4(II)(B), *supra*, are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

### I.    The Special Masters

The Special Masters shall administer, coordinate, and preside over the SSP. This authority includes the power to order parties and/or party representatives with full power of settlement to submit briefing, engage in discovery, and attend settlement conferences. The Special Master may enter any other order to effectuate the provisions of the SSP, subject to the review and control of the Court.

### II.    Compensation of Appointed Neutrals

The Special Masters and all other appointed neutrals under the SSP (the "Appointed Neutrals") shall be compensated in the amount of:

A. $400 per hour for the Appointed Neutrals, which shall also be applicable to actual time spent by a Special Master on court-assigned duties related to discovery disputes under Section 2 herein;

B. $360 per case for the Special Masters for administrative expenses in administering, scheduling, organizing, and coordinating the Streamlined Settlement Process for each case amongst the parties as well as with the Appointed Neutrals; and

C. all reasonable direct and actual expenses of the Appointed Neutrals, including but not limited to meeting rooms, and exclusively dedicated electronic audio or video conference means    There shall be no reimbursement for travel expenses,    overnight accommodations, or meals.

D. Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Special Master, all of the above fees and expenses shall be paid twenty-five percent (25%) by the plaintiff(s) and seventy-five (75%) by the defense(s).[12]

E. Should a mediation be cancelled less than one week prior to its scheduled time without good cause, a $500 cancellation fee may be assessed against the responsible and/or cancelling party,    together with the applicable hourly fee for any actual preparation time incurred by the Mediator..

---

[12] In instances where an insurer of an insured has filed suit against the insured concerning a Hurricane case the insured shall be considered the plaintiff for the purposes of the cost split under this order and the insurer shall be considered the defendant.

IT IS FURTHER ORDERED that $90 of the administrative fee provided for in Section II(B) shall be added to the cost of filing the petition, collected by the clerk of court, and remitted monthly to the Special Master; and that $270 of the administrative fee provided for in Section II(B) shall be added to the cost of the first notice or filing by the defendant, collected by the clerk of court, and remitted monthly to the Special Master for CMO Operations. The Special Master for CMO Operations shall pay the expenses associated with the SSP administration and remit the amount to the other Special Master due pursuant to any written agreement between them.

### III.   Role of Appointed Neutrals

A. The Special Masters and Appointed Neutrals may communicate *ex parte* with the Court when deemed appropriate by the Special Masters, at their discretion, without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

B. The Special Masters and Appointed Neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

C. The Special Masters and Appointed Neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

D. The Special Masters may designate any of the Appointed Neutrals to act as his deputy from time to time and to perform any duties of the Special Master.

E. If an Appointed Neutral reports that a case did not settle due to a party's failure to comply with its obligations under the Disaster Protocols, including the obligation to supplement the Disaster Disclosures at least twenty-one (21) days prior to the mediation, the Special Master may order another mediation and may assess the full cost of the first mediation against the party in violation.

### IV.   Notice to the Special Masters.

Any party to a Hurricane Case may file a motion with the assigned District Judge requesting an opt out from the SSP only for good cause shown within the applicable deadline (*see* Section 4 below). IT IS FURTHER ORDERED that any party filing an opt out motion shall copy the Special Master, and that the parties shall provide notice of the Court's Order on the motion to opt out to the Special Master whether the motion to opt out is granted or denied.

IT IS FURTHER ORDERED that counsel for any party to a Hurricane Case that has been provided a copy of this Order shall be required to provide email notice to the Special Master of the initial pleadings and all subsequent filings in any Hurricane Case (knowledge of this provision is presumed where a counsel for the party has been provided a copy of this Order for a case for that party or any other party). The Special Master shall send an Initial Informational Package on the SSP to all parties and/or counsel of record for Hurricane Cases subject to the SSP.

## SECTION 4. STREAMLINED SETTLEMENT PROCESS ("SSP")

Within 15 days of the filing of the defendant's responsive pleading (or within 15 days of the receipt of a copy of this Order by the defendant or its counsel, including by electronic or other means – whichever is later), either party may file a motion to opt out of this Streamlined Settlement Process for good cause shown. This motion may be decided on the briefs without hearing. Unless the Court authorizes an opt out, then the parties shall participate in the two-staged Streamlined Settlement Process, which is described as follows:

*I.    First Stage: Settlement Conference*

Within 45 days of the Disclosure Deadline in all Hurricane Cases, all parties shall conduct an informal settlement conference ("ISC") among all parties and their counsel. Within 15 days of the Disclosure Deadline counsel shall meet to confer and discuss a mutually convenient time, date, and manner for the conference. In light of the COVID-19 pandemic as well as the desire to resolve the Hurricane Cases as expeditiously as possible, settlement conferences should be conducted, where possible, by phone or audiovisual communication, including but not limited to Zoom, Skype, or similar platforms.

Counsel for each plaintiff and for each defendant must have full authority to resolve the case from their clients, who shall be readily available by telephone if circumstances for the ISC require assistance.

The ISC shall include a particularized demand from the plaintiff that is itemized by each claimed policy coverage category then known to be remaining in dispute and/or any existing demand for extra-contractual damages that are then claimed to be incurred. The demand shall be submitted by email to the opposing counsel on the form attached as Exhibit "C" at least 72 hours prior to the scheduled ISC.

The attorney for the insurer will conduct a call prior to the ISC with the relevant client representative to ensure the client representative has reviewed the ISC demand. The client representative will inform their counsel concerning additional information requested to evaluate the claim, and their counsel shall convey that to opposing counsel at the ISC or in writing. The insurer shall submit by email to the opposing counsel an itemization of the prior payments awarded by coverage category on the form attached as Exhibit "D" at least 48 hours prior to the scheduled ISC.

The defendant shall respond at the ISC to briefly detail why it does not agree with the demand by category. The plaintiff may request that this response be reduced to writing, and if requested it shall be answered within 15 days of the ISC.

All ISC communications shall be covered by mediation confidentiality. The Special Master may order any particular modifications in this protocol for specific cases, parties, or attorneys.

*II.    Second Stage: Mediation*

Cases that do not resolve during the initial settlement conference shall be set for a formal mediation. The parties shall provide the Special Master written notice (including by email and preferably jointly) of completion of the First Stage along with a request for mediation. The Special Master may assign a neutral within 60 days of the Disclosure Deadline even if neither party submits the written notice. The Special Master shall then assign each Hurricane Case to an Assigned Neutral, and it is the goal that Assigned Neutrals complete mediation within 90 days of appointment. The Special Master (or Appointed Neutral for the case) may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties. In the event a counsel provides an insufficient number of available dates the Special Master may authorize an extension of the SSP period for that case or may require mediation on a date selected by the Special Master, including on a weekend day.

A.    **Conduct of Mediation**

After scheduling of an agreed mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, on the length of the confidential mediation statements and the permissible number of exhibits attached thereto.

Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the case's Appointed Neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Special Master the defendant(s) representative shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone or video communication, if circumstances for that particular mediation require assistance.

To the extent agreed by the parties and the case's Appointed Neutral, this mediation conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

As part of this Streamlined Settlement Process, the attendees may be invited to each make opening statements but there shall be no live witness testimony.

### B.  List of Neutrals

The Court hereby initially designates and appoints the following individuals as "neutrals" (mediators / appointed neutrals) for the SSP:

The Special Masters and any other person designated by the Special Master after consultation with the Court who is qualified pursuant to R.S. 13:4165(F)(5).

### C.  Neutral Training

The Special Masters may undertake to provide special training to the neutrals, including coordinating participation in training prepared for the Streamlined Settlement Process. The Special Masters may form a plaintiffs' liaison committee and a defense liaison committee or may coordinate with any related Federal Court and/or State Court liaison committees for Hurricane Cases. If formed, the Special Masters may solicit input and responses concerning commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Special Masters may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The Special Masters may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

### III.   Extensions of Time

Upon a joint request by the parties, or for other good cause shown, the Special Masters may modify any deadline specified in this Order.

## SECTION 5. COURT APPOINTED UMPIRES REQUIRED UNDER POLICIES

If an insurance policy implicated in a Hurricane Case provides for court appointment of a neutral or third appraiser for valuation disputes (hereinafter referred to as an "Umpire"), any request for the appointment by this Court of an Umpire shall only occur if the parties have been unable to agree on their own.

Any request for the appointment by the Court of an Umpire shall be made in writing no later than the deadline for filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Special Master for CMO Operations via email at Hurricanelda@colelaw.us, This deadline may be extended by the Special Master in exceptional circumstances for good cause.

If a requesting party is seeking court appointment of an Umpire and no case is otherwise filed or pending before this Court (an "Umpire Only Filing"), then the parties shall follow the same procedures.

An Insurer is required to provide written notice of the request to any known counsel for the Insured (or directly to an unrepresented Insured). An Insured is required to provide written notice of the request to any known counsel of Insurer (if any) or alternatively to the Insurer's primary point of contact on the claim with Insured. The appraisers previously selected by each party shall also be provided notice, and their contact information (phone and email address) shall be provided in the request for appointment of an Umpire.

A written report and recommendation concerning the Umpire's appointment shall be issued to the parties and shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the assigned District Judge for good cause following a motion opposing the report and recommendation filed within seven days of transmittal of the written report and recommendation. Alternatively, the Special Master may issue the report and recommendation to the Court, and the Court may directly issue an Order concerning the appointment.

In an Umpire Only Filing, the Special Master may provide the report and recommendation to the civil Duty Judge as of the time of the issuance of the report and recommendations. Alternatively, the Special Master may issue the report and recommendation to the parties in the same manner described in the paragraph above. If any party objects to the report and recommendation in an Umpire Only Filing then it shall file a formal petition concerning the underlying dispute within seven days and the case shall be assigned to a judge in the usual manner for a decision concerning the report.

**IT IS ORDERED** that the appraisers appointed by the parties are required to complete their work and submit any disputes to the Umpire no later than 60 days following the first Initial Disclosure Deadline under this Order (105 days following the filing of the defendant's responsive pleadings). The appointed Umpire shall issue his report no later than 21 days from the submission of the dispute to the Umpire. This period may be modified by the Special Master upon a showing of good cause.

**SECTION 6.   CLERK OF COURT AND NOTICE**

A Plaintiff filing a Hurricane Case should note on its cover letter and/or first pleading, in ***ALL CAPS*** and ***RED FONT***, that the matter is a "HURRICANE CASE". **Each caption and on each pleading, "HURRICANE CASE" in bold print shall follow the docket number.**

In all subsequently filed Hurricane Cases, a copy of this Order shall be served on the defendant(s) along with the Petition and Citation. The Clerk of Court shall include a reference that the Case Management Order is served with the Petition in the Citation issued. The Clerk of Court shall also provide a copy to the plaintiff by any authorized means.  If the Special Master learns the Case Management Order has not been entered into the record by the Clerk of Court, he shall serve it on the parties by email and may file proof of the same into the record at no cost.

The Clerk of Court shall transmit via email, at least weekly, to the Special Master the docket numbers, case caption, and attorney contact information for any Hurricane Cases filed.

Any party making any filing or submitting any memoranda in a Hurricane Case subject to this Order shall serve a courtesy copy on the Special Master in the same manner as enrolled counsel via email at HurricaneIda@colelaw.us .

## SECTION 7.  COURT SUPERVISION

The Disaster Protocols and Streamlined Settlement Process shall, at all times, be subject to the ultimate control and supervision of the Court. This Case Management Order for Hurricane Cases is subject to modification pursuant to further orders of this Court. **All provisions of this Order shall be applicable to all Hurricane Cases whether then pending or thereafter filed.**

SO ORDERED on this ___23___ day of December, 2021, at Houma, Louisiana.

**Timothy C. Ellender, Jr.**
District Judge, Division "A"

Jason A. Dagate
District Judge,  Division "B"

**Juan W. Pickett**
District Judge, Division "C"

David W. Arceneaux
District Judge, Division "D"

Randall L. Bethancourt
District Judge, Division "E"

FILED

DEC 29 2021

Deputy Clerk of Court
Parish of Terrebonne, LA

9

**EXHIBIT 1**

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled _____ have been designated as confidential. I have been informed that any of the documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

I hereby agree that I will not disclose any information contained in the documents to any other person. I further agree not to use this information for any purpose other than this litigation.


_____     **DATE:** _____

Signed in the presence of:




_____

(Attorney)



10

FILED

DEC 29 2021

Deputy Clerk of Court
Parish of Terrebonne, LA

R. KYLE ARDOIN
SECRETARY OF STATE
P.O. BOX 94125
ATON ROUGE, LA 70804-9125



9489 0090 0027 6533 0272 37



FIRST CLASS

US POSTAGE ᴾᴮ PITNEY BOWES

ZIP 70802    $ 014.15⁰
02 4W
0000382749 AUG 28. 2023